**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROSS DUTCHER, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-2062 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiff Ross Dutcher, individually and on behalf of all others similarly situated, files this First Amended Class Action Complaint and Jury Demand for damages and injunctive and equitable relief arising from NewRez LLC d/b/a Shellpoint Mortgage Servicing's ("Defendant" or "NewRez") violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788. In support, Plaintiff makes the following allegations upon information and belief. The allegations pertaining specifically to Plaintiff are based on his personal knowledge.

### Summary of the Claims

1. Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to, among many other things, provide some relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties caused by the pandemic.

2.      On March 27, 2020, the CARES Act was signed into law. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020). Section 4022 of the CARES Act affords homeowners who have experienced economic hardship as a result of COVID-19 to request a forbearance on their loans.

3.      Following Congress's enactment of the CARES Act, Defendant extended a staggering 210,309 forbearances to COVID-19 affected homeowners—amounting to approximately 1 out of 10 of Defendant's borrowers.[1]

4.      Lacking the human capital and other resources to properly manage the unprecedented number of forbearances, Defendant decided to cut corners by negligently, knowingly, or willfully sending misleading statements and other misleading communications to Plaintiff Dutcher and the proposed class members, indicating, *inter alia*, that they could be subject to foreclosure if they failed to cure the delinquencies that accrued during their CARES Act forbearance plans by making a lump sum payment on their regular due dates—in contravention to the terms of their forbearances and relevant laws and regulations. In so doing, Defendant misled its borrowers regarding their coverage under the CARES Act forbearance programs in violation of various provisions of the FDCPA, 15 U.S.C. § 1692, *et seq.* and the Rosenthal Act, Cal. Civ. Code § 1788, *et seq.*

5.      Further, in a misguided attempt to market its refinancing, forbearance, payment plans, and other options, Defendant called Plaintiff Dutcher and other class members on their cell phones using an automatic telephone dialing system ("ATDS") and prerecorded or artificial voice messages, but never obtained prior express consent.  Even after Plaintiff Dutcher invoked his privacy rights and requested that the robocalls stop, NewRez continued to bombard his cell phone with prerecorded robocalls.

---

[1] New Residential Investment Corp., Annual Report (Form 10-K) at 81 (Feb 16, 2021).

6.     Under the reasonable restrictions of the TCPA, Defendant is prohibited from using a prerecorded or artificial voice message to call a cellular telephone number without the recipient's express written consent.  Likewise, Defendant is prohibited from calling cellular telephones using an ATDS without the recipient's express written consent. Finally, the TCPA requires Defendant to maintain an internal do-not-call list and prohibits Defendant from calling consumers who invoke their right to demand calls stop.

7.     Defendant is a sophisticated mortgage originating and servicing company that could easily avoid these violations.  But, because of its lax corporate practices and apparent lack of regard for the sensible restrictions of the TCPA, it has not done so.

8.     Plaintiff brings this action on behalf of similarly situated class members to enforce the remedial purposes of the FDCPA, Rosenthal Act, and TCPA and put a stop to Defendant's improper servicing of their accounts.

## Parties

9.     Plaintiff Ross Dutcher is a natural person residing in Los Angeles, California, who has a mortgage serviced by Defendant.

10.    NewRez LLC is a limited liability company organized under the laws of the state of Delaware, which has its principal place of business in this District at 1100 Virginia Drive, Fort Washington, PA 19034.

## Jurisdiction & Venue

11.    This Court has original federal question and subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*. This Court also has subject matter jurisdiction under the Class Action Fairness Act because at least one member of the class is a citizen of a different state than one Defendant; there are more than 100 members of the class; and the aggregate

amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A).  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 are satisfied.

12.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Eastern District of Pennsylvania because Defendant's headquarters are located in this District.

**TCPA Background**

13.     According to the Federal Trade Commission's ("FTC") December 2019 Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in recent years. Consumer complaints to the FTC about illegal calls have more than quintupled over the last 10 years, growing from about 63,000 per month in 2009 to an average of more than 315,000 per month in 2019.

14.     As one publication put it, "[i]f robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015).

15.     Congress enacted the TCPA in 1991 to regulate the explosive growth of the telemarketing industry and protect citizens from the nuisance and invasion of privacy caused by unwanted telephone calls, described by its chief sponsor as the "scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

16.     The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the FTC and the Federal Communications Commission ("FCC"). Consequently, private consumer enforcement actions play a critical role in combatting illegal telemarketing. 47 U.S.C. § 227(b)(2)–(3).

17.     Under the TCPA, it is unlawful to (1) make calls to cellular telephone lines using an "automatic telephone dialing system," or (2) make calls to any cellular line using an artificial or prerecorded voice without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012). Plaintiff alleges violations of these provisions in Counts One and Two.

18.     "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either [1] to store a telephone number using a random or sequential number generator, or [2] to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). Defendant used an ATDS to place prerecorded telemarketing calls to Plaintiff and other class members as alleged more fully below.

19.     The FCC has explained that such calls are prohibited absent prior express consent because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and they can be costly and inconvenient for the consumer. The FCC has defined prior express consent as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9).

20.     Additionally, the FCC rules allow consumers to make "do-not-call" requests that companies must honor and track via internal do-not-call ("IDNC") lists. 47 U.S.C. § 227(c)(1)(A); 47 C.F.R. § 64.1200(d); 16 C.F.R. § 310.4(b)(1)(ii) and (iii). This rule applies to

all cellular telephone lines. Plaintiff alleges violations of these provisions in Count Three.

21.     The TCPA provides for statutory damages of $500 for each call in violation of the statute and implementing regulations, which may be trebled if the violations are knowing and willful. 47 U.S.C. § 227(b)(3).

22.     Plaintiff brings this action to enforce the TCPA in the face of rampant illegal telemarketing calls made by Defendant to market and sell their mortgage refinancing packages and to market forbearance plans, through which they market and sell other profitable services.

23.     Defendant knowingly and willfully violated the TCPA when they placed thousands of illegal phone calls to Plaintiff's and class members' cellular telephone lines using an ATDS. They also violated the TCPA by placing calls to Plaintiff and class members using prerecorded voice messages without obtaining prior express consent. Indeed, Defendant doubled down on its illegal campaign by continuing to place those illegal calls to Plaintiff and class members who demanded the calls stop.

24.     Here, Defendant violated these provisions of the TCPA en masse. Plaintiff is just one of the thousands of consumers who has received illegal autodialed and prerecorded robocalls from Defendant without ever giving express prior consent to receive such calls. He is also one of many who expressly asked that Defendant quit placing robocalls to his phone, only to have that request ignored. All three instances are hallmark violations of the TCPA.

### FDCPA Background

25.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

26.     The FDCPA prohibits debt collectors from using "any false, deceptive, or

misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

27.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

28.     Under the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

29.     A "debt collector" is "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

30.     The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

31.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**Rosenthal Act Background**

32.     The Rosenthal Fair Debt Collection Practices Act is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *See People ex rel. Lungren v. Superior Court,* 14 Cal. 4th 294, 313, 58 Cal. Rptr. 2d 855, 926 P.2d 1042 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose."); *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892, 175 Cal. App. 4th 324, 340 (Cal. Ct. App. 2009); Cal. Civ. Code § 1788.

33.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt

collection." Cal. Civ. Code § 1788.2(c).

34.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

35.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e)

36.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

37.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f).

38.     The Rosenthal Act makes it illegal for any entity covered by it to engage in certain conduct prohibited by the FDCPA, including the conduct prohibited in Section 1692e. Cal. Civ. Code § 1788.17.

39.     By engaging in conduct prohibited by the FDCPA, Defendant also violated the Rosenthal Act.

40.     The Rosenthal Act also makes it illegal to represent that consumer debt "that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made." Cal. Civ. Code § 1788.13(j).

**Factual Allegations**

*Defendant's Misleading CARES Act Mortgage Statements*

41.     On or around March 24, 2005, Plaintiff Dutcher purchased a home in Los

Angeles, California, with a mortgage loan from Franklin American Mortgage Company.

42.     On or about January 1, 2020, Defendant acquired the right to service Plaintiff

Dutcher's mortgage from a previous mortgage servicer.

43.     When Defendant acquired Plaintiff Dutcher's mortgage, payments were overdue

and the mortgage was in default.

44.     Defendant is a "debt collector" within the meaning of the FDCPA and the

Rosenthal Act.

45.     On October 30, 2020, Plaintiff Dutcher received a "Forbearance Offer" from

Defendant approving his application for a three-month CARES Act Forbearance Plan, starting on

November 1, 2020. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub.

L. 116-136, 134 Stat. 281 (2020).

46.     On December 21, 2020, Plaintiff Dutcher received a "Forbearance Auto-

Extension Notice" from Defendant indicating that his Forbearance Plan had been extended for an

additional period of six months, starting on November 1, 2020, and ending on May 1, 2021.

47.     Despite being under a Forbearance Plan, however, Defendant sent misleading

statements and other representations to Plaintiff that placed him under the impression that his

loan was not in active forbearance and that he owed a lump sum amounting to several times his

normal mortgage payment, stating "Failure to bring your loan current may result in fees and

foreclosure—the loss of your home."

48.     Specifically, the misleading representations that Defendant sent to Plaintiff throughout his Forbearance Plan specified an "Amount Due" and "Next Due Date" for each of the periodic payments that Plaintiff was not obligated to pay. In the "Explanation of Amount Due" beneath that, Defendant misrepresented that Plaintiff had an "Overdue Payment" equal to the monthly payments that he forwent pursuant to the Forbearance Plan.  Nowhere in the mortgage statements did Defendant explain that they were for informational purposes and that no payment was due.

49.     Further, Defendant's representations contained a "Delinquency Notice" which threatened that Plaintiff's failure to bring his "loan current" could result in the "loss of [his] home." Despite Plaintiff's mortgage being protected under a CARES Act forbearance plan, Defendant misleadingly stated, "**You are late on your mortgage payments.**  Failure to bring your loan current may result in fees and foreclosure—the loss of your home."  After calculating the amount of his delinquency, Defendant represented to Plaintiff Dutcher that "[y]ou must pay this amount to bring your loan current." (emphasis in original).

50.     At all relevant times, Plaintiff's mortgage debt was demanded by Defendant as due or owing.

51.     Absent from the mortgage statements, representations, or communications from Defendant were repayment options for Plaintiff to exit the forbearance plan, such as those required by the CARES Act and related law—i.e., an option to defer the payment to the end of the loan, lengthen the loan term, or defer payment until the sale or refinancing of the home.

52.     After receiving these misleading and misleadingly incomplete statements, Plaintiff subsequently contacted his attorney for guidance on the matter.

53.     Defendant's misleading mortgage-related statements, however, were not the only misdeed that it committed in connection with Plaintiff Dutcher's CARES Act Forbearance Plan.

### *Defendant's Robocall Scheme*

54.     Plaintiff's residential mortgage is serviced by Defendant.

55.     Plaintiff's telephone number XXX-XXX-8762, is assigned to a cellular telephone service.  Plaintiff received the telephone calls at issue at that number.

56.     On or about December 18, 2020, Defendant made an autodialed call to Plaintiff's cellular telephone line, (XXX) XXX-8762, which played a prerecorded message when Plaintiff answered.

57.     After a pause of dead air followed by a click (a telltale sign of Defendant's use of an ATDS), Plaintiff heard the following prerecorded message:

> This is Shellpoint mortgage servicing with a call for __ if you are not __ please hang up the phone now. Due to the effects of the COVID-19 pandemic your mortgage loan account was placed on a forbearance plan on your request. In support of this, communication was sent to you by email and or mailed letter providing the forbearance plan specifics. We are reaching out to provide you with options to assist during this difficult time. Shellpoint mortgage servicing is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. If you are still experiencing a hardship with making your payment and would like to actively remain on the forbearance plan please press 1. If you no longer wish to remain on the forbearance plan and are ready to be reviewed for other options press 2. If you are no longer experiencing hardship with making your monthly mortgage payment and are able to pay the total amount today press 3. To repeat this message press[sic].[2]

---

[2] Consumers across the United States have complained of having the same prerecorded message delivered to their phone. https://www.nomorobo.com/lookup/866-825-2174 (last accessed May 4, 2021).

58.     Plaintiff received multiple calls that played this identical generic prerecorded message regarding forbearance and a marketing solicitation to "review [customers' accounts] for other options" and services that NewRez offers.[3]

59.     Defendant placed the calls at issue using a "prerecorded voice" or "automated voice" as those terms are used and applied in the TCPA, 47 U.S.C. § 227(b)(1)(A).

60.     In approximately January of 2021, Defendant made a second autodialed call to Plaintiff's cellular telephone line, (XXX) XXX-8762, that played the same prerecorded message.

61.     On March 17, 2021, Plaintiff received another call on his cellular phone from Defendant.

62.     On or about March 24, 2021, Plaintiff called Defendant to again make it abundantly clear that he did not want to receive any additional unsolicited calls or robocalls and that he was invoking his rights to privacy under California law. Plaintiff made sure to record the conversation this time to document Defendant's callous treatment of his privacy rights; below is an excerpt of that recording:

> **Recorded message:** Shellpoint Mortgage Servicing is a Debt Collector. This is an attempt to collect a debt; any information obtained will be used for that purpose; this is a recorded call.
>
> **Operator**: Shellpoint Mortgage Servicing is a Debt Collector; this is an attempt to collect a debt; any information obtained will be used for that purpose. Also, California residents are entitled to certain privacy rights.
>
> **Mr. Dutcher**: I just want to check what are my options in adjusting my mortgage to get out of the CARES Act.
>
> **Operator**: So, the options would be provided to bring[sic] the account current once the forbearance ends, would be to, um, modification or repayment plan or

---

[3] Plaintiff received, but did not answer, numerous other calls from Defendant NewRez that, on information and belief played the same prerecorded message.

putting the payments that were made within that timeframe to be applied to the account.

**Mr. Dutcher**: Ok, and also I live in California and I wanted to exercise my California rights to privacy.

**Operator**: Ok.

**Mr. Dutcher**: Because I've been getting robocalls from you guys and I want that to stop.

**Operator**: Ok, I could go ahead and submit that information; I would also advise you to go to shellpointmtg.com and review the privacy rights there as well, because you can opt out of more of them there as well.

63.    Defendant confirmed Plaintiff's request and entered a "no contact" on his account.

64.    Nevertheless, a week later, on April 1, 2021, in complete disregard of Plaintiff's requests that the calls stop, Defendant placed another autodialed call from (866) 825-2174 to Plaintiff's cellular telephone line, (XXX) XXX-8762. It played the same prerecorded message as the December 18, 2020 call.

65.    Despite Plaintiff Dutcher's express request that Defendant stop calling his cellular phone and the entry of "no contact" on his account, Defendant called Plaintiff's cell phone four more times on May 21, 24, 26, and 28 of 2021.



66.     Plaintiff never consented verbally or in writing to Defendant contacting him on his cellular phone, let alone via autodialed and prerecorded calls.

67.     In fact, Plaintiff's account with Defendant demonstrates that "[t]here are no phone numbers associated with [Plaintiff's] account," and it is devoid of any consent:



68.     That, however, did not stop Defendant from using an ATDS to call Plaintiff's cell phone with prerecorded messages.

69.     The calls here possess the hallmark characteristics of automated calls. After receiving the at-issue calls as alleged above from Defendant, Plaintiff experienced a delay of dead air before a prerecorded message played, both of which are indicia of an automatic or predictive dialing system.

70.     The dialing system used to place the prerecorded calls, like most of the dialing systems used by call broadcasters today, had the capacity to store telephone numbers, generate numbers sequentially, and dial those numbers without human intervention.

71.     In other words, the dialing system stores, generates, and dials each telephone number from a list of sequentially ordered numbers.

72.     In the alternative, the dialing system used to place the calls stores, generates, and dials each telephone number in a random sequence.

14     FIRST AMENDED CLASS ACTION COMPLAINT

73. Defendant's calls were not just to existing customers. Numerous consumers have gone online to complain and inform other consumers that they received solicitation calls from Defendant even though they have "no affiliation with" them. Similarly, consumers have uploaded recordings of the calls placed by Defendant, including a call where Defendant played a prerecorded message asking them to "hold for the next available representative." Those facts alone support the inference that the calls were random and placed with an ATDS.[4]

74. Plaintiff believes that discovery of Defendant's records of the at-issue numerically sequenced and randomly generated calls will demonstrate that Defendant made the calls with an ATDS.

75. Defendant is aware or disregarded that the TCPA prohibits ATDS and prerecorded calls without the recipient's prior express consent. But it placed the calls anyway, even without such consent. In so doing, Defendant knowingly invaded Plaintiff's and the class members' personal privacy in direct contravention of the TCPA.

76. Defendant's calls invaded Plaintiff's privacy and intruded upon his right to seclusion. The calls frustrated and upset Plaintiff by interrupting his daily life and wasting his time.

77. Defendant's calls intruded upon and occupied the capacity of Plaintiff's cellular phone and depleted its battery. The calls temporarily seized and trespassed upon Plaintiff's use of his cellular phone and caused him to divert attention away from other activities to address the calls.

---

[4] https://www.shouldianswer.com/phone-number/8668252174 (last accessed May 4, 2021);
https://findwhocallsyou.com/8668252174?CallerInfo (last accessed May 4, 2021);
https://800notes.com/Phone.aspx/1-866-825-2174 ((last accessed May 4, 2021);
https://directory.youmail.com/directory/phone/8668252174 ((last accessed May 4, 2021);
http://live.nomorobo.com/lookup/866-825-2174 (last accessed May 4, 2021).

78.     Defendant placed solicitation telephone calls to Plaintiff and other customers for telemarketing purposes, including but not limited to promoting mortgage-lending refinancing services, mortgage forbearance plans, and other services.

79.     Defendant placed such telephone calls en masse to thousands of its customers' and other consumers' cellular telephone lines throughout the United States.

### Class Action Allegations

80.     Plaintiff brings this action individually and on behalf of all other persons or entities similarly situated throughout the United States pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

1)      Class One (the "Prerecord Class") (Count One):

All persons within the United States who, within the four years prior to the filing of this action, (1) received a nonemergency phone call from or on behalf of Defendant, (2) to their cellular telephone line, (3) using an artificial or prerecorded voice, (4) without prior express consent or after revoking consent.

2)      Class Two (the "ATDS Class") (Count Two):

All persons within the United States who, within the four years prior to the filing of this action, (1) received a phone call from or on behalf of Defendant, (2) to their cellular telephone line, (3) using an automatic telephone dialing system, (4) without prior express consent or after revoking consent.

3)      Class Three (the "IDNC Class") (Count Three):

All persons within the United States who, in the four years prior to the filing of this action, (1) received a phone call from or on behalf of Defendant, (2) to their cellular  telephone line, (3) where the persons called had previously requested that Defendant stop calling.

4)      Class Four ("the FDCPA Class") (Count Four)

All persons in the United States who are or were borrowers on residential mortgage loans that were owned or serviced by Defendant, which were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant sent

misleading representations regarding the amounts or timing of payments due from one year prior to the filing of the complaint until the date the Court certifies a class.

5) Class Five (the "California Class") (Count Five)

All persons with a California address who are or were borrowers on residential mortgage loans that were owned or serviced by Defendant, which were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant sent misleading representations regarding the amounts or timing of payments due from one year prior to the filing of the complaint until the date the Court certifies a class.

81. Excluded from the classes are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

82. The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

83. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

84. Plaintiff and members of the proposed classes were harmed by the Defendant's acts in at least the following ways: Defendant illegally contacted Plaintiff and the members of the classes improperly despite oral or written requests that the calls stop, invading the privacy of Plaintiff and the members of the classes and subjecting them to annoying and harassing nuisance calls.

85. Plaintiff is a member of the classes.

86. Plaintiff reserves the right to amend the definition of the classes if discovery or further investigation reveals that the classes should be expanded or otherwise modified.

87.     *Community of Interest*: There is a well-defined community of interest among members of the classes, and the disposition of the claims of these members of the classes in a single action will provide substantial benefits to all parties and to the Court.

88.     *Numerosity*: While the exact number of members of the classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the classes is ascertainable based upon the records maintained by Defendant. The classes include thousands of members, at least. Therefore, the classes are sufficiently numerous that joinder of all members of the classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be to the benefit of the parties and the Court.

89.     *Ascertainability*: Names and addresses of members of the classes are available from Defendant's records. Notice can be provided to the members of the classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under the TCPA, the FDCPA, and the Rosenthal Act.

90.     *Typicality:* Plaintiff's claims are based on the same facts and legal theories and are, therefore, typical of the claims of the other members of the classes which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3). Plaintiff and members of the classes received calls on their cellular telephone lines from Defendant using an ATDS or prerecorded message without their prior express consent. Likewise, Plaintiff and members of the classes demanded the Defendant stop calling them and requested to be placed on Defendant's internal do-not-call list, but Defendant's calls kept ringing to their phones.

91.     Plaintiff's claims under the FDCPA and the Rosenthal Act are also based on the same facts and legal theories as members of the class.  Specifically, these claims are based on whether Plaintiff and all applicable class members had a mortgage serviced by Defendant that was in forbearance under the CARES Act and to whom Defendant nevertheless sent misleading and misleadingly incomplete representations, including threatened foreclosure without offering or informing Plaintiff and applicable class members of repayment plans required by law. There are no defenses that Defendant may have that are unique to Plaintiff. Plaintiff has fulfilled all conditions precedent to bringing this lawsuit.

92.     *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the members of the classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of the classes, and Plaintiff is represented by counsel skilled and experienced in class actions, including TCPA, FDCPA, and Rosenthal Act class actions.

93.     *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)     the expense and burden of individual litigation makes it economically unfeasible for members of the classes to seek to redress their claims other than through the procedure of a class action;

(b)     if separate actions were brought by individual members of the classes, the resulting duplicity of lawsuits could lead to differing adjudications; and

(c)     absent a class action, Defendant is likely to continue violating the TCPA, the FDCPA, and the Rosenthal Act based on the allegations complained of herein.

94.     ***Predominance and Commonality*:** Common questions of law and fact exist and predominate over any questions which affect individual members of the classes, and a class action is the superior method for fair and efficient adjudication of the controversy under Rules 23(a)(2) and (b)(3) of the Federal Rules of Procedure. Such common questions of fact and law include, but are not limited to, the following:

(a)     Whether the calls at issue were placed using an artificial or prerecorded voice;

(b)     Whether the calls were placed using an ATDS;

(c)     Whether the calls were placed without obtaining the recipients' valid prior express written consent;

(d)     Whether the calls were placed after Plaintiff and the members of the classes requested to be placed on the Defendant's IDNC list or after revoking any prior express consent;

(e)     Whether Defendant's conduct was negligent, willful, or knowing;

(f)     Whether Defendant serviced residential mortgages that were in forbearance;

(g)     Whether Defendant threatened foreclosure if a delinquent loan was not made current via lump sum and/or made other misstatements to residential mortgage borrowers whose loans were in forbearance under the CARES Act;

(h)     Whether Defendant offered repayment plans while Plaintiff and class members exited forbearance;

(i)     Whether Plaintiff and the members of the classes are entitled to statutory damages because of Defendant's actions;

(j)     Whether Defendant is liable for damages and, if so, the amount of such damages; and

(k)      Whether Defendant should be enjoined from engaging in such conduct in the future.

## Claims for Relief

### Count One:
### Violation of the TCPA's provisions prohibiting
### prerecorded calls to cellular telephone lines

95.      Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein, specifically including paragraphs 54–79.

96.      Defendant violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's and class members' cellular  telephone lines using an artificial or prerecorded voice without prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

97.      Defendant's violations were willful and/or knowing in that, among other things, Defendant continued to place such calls to Plaintiff even after Plaintiff had requested that Defendant cease making such calls.

### Count Two:
### Violations of the TCPA provisions prohibiting
### autodialed calls to cell phones

98.      Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein, specifically including paragraphs 54–79.

99.      Defendant violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's and class members' cellular telephone lines using an automatic telephone dialing system without prior express consent. *See* 47 U.S.C. § 227(b)(1)(A).

100.      The Defendant's violations were willful and/or knowing in that, among other things, Defendant continued to place such calls to Plaintiff even after Plaintiff had requested that Defendant cease making such calls

## Count Three:
## Violations of the TCPA's Do Not Call provisions

101.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein, specifically including paragraphs 54–79.

102.    Defendant violated the TCPA, either directly or through the actions of others, by placing phone calls to the Plaintiff's and class members' cellular  telephone lines after they requested that the calls stop, and Defendant did so for the purpose of marketing products and/or services, in violation of 47 U.S.C. § 227(c)(1)(a), 47 C.F.R. § 64.1200(d)(3) and (6), and 16 C.F.R. § 310.4(b)(1)(iii)

103.    Defendant's violations were willful and/or knowing, in that, among other things, Defendant continued to place such calls to Plaintiff even after Plaintiff had requested that Defendant cease making such calls.

104.    As to all three counts, Defendant's acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*, and its implementing provisions.

105.    As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, and accompanying regulations, Plaintiff and each member of the proposed classes are entitled to damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

106.    Plaintiff and members of the proposed classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

## Count Four:
## Violations of the Fair Debt Collection Practices Act

107.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein, specifically including paragraphs 41–53.

108.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he purchased a home in California by mortgage primarily for personal, family, or household use.

109.      Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another.

110.     Additionally, Defendant began servicing Plaintiff's mortgage while it was delinquent, based on the past due amount owed, so none of the exceptions under 15 U.S.C. § 1692a applies.

111.     The FDCPA prohibits debt collectors from misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a).

112.     Defendant sent misleading statements and representations[5] to Plaintiff and the class members during, and in connection with, their forbearance plans which misrepresented the legal status of their loans by indicating or implying that the loans were delinquent and that there would be other adverse consequences due to the borrower's failure to make periodic payments, as alleged more fully above.

113.     Further, the misleading statements that Defendant sent to Plaintiff and the class members during their forbearance plans misrepresented the "Overdue Payment," "Total Amount Due," and "Next Due Date" of their periodic mortgage payments in contradiction with the terms of their forbearance plans and the regulation promulgated, also as alleged more fully above.

114.     Defendant also sent misleading statements to Plaintiff and the class members during their forbearance plans, indicating that if their finances were "affected by COVID-19"

---

[5] The misleading statements included representations that they were being sent by Defendant as a "debt collector" in "an attempt to collect a debt."

they could be eligible for the very forbearance plan that they were already enrolled in. As a result, Defendant misrepresented the character of their loan—namely, that their loans were not already in a forbearance plan.

115.   Moreover, Defendant also did not offer the repayment options required by the CARES Act and related law to avoid foreclosure, such as deferring payment until the end of the loan, lengthening the loan term, or deferring payment until the sale or refinancing of the home.

116.   In so doing, Defendant violated 15 U.S.C. § 1692e(2)(a).

117.   Further, the FDCPA prohibits debt collectors from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

118.   Under the CARES Act, mortgage servicers are required to offer borrowers loss mitigation plans in lieu of foreclosure upon the expiration of their forbearance plan and are not permitted to demand all forbearance payments at the end of the forbearance agreement.[6]

119.   Further, under Sections 4022(b)(3) and (c)(1) of the CARES Act, a mortgage servicer is prohibited from charging any "fees, penalties, or interest" during the span of a borrower's forbearance.

120.   Despite the foregoing, Defendant sent to Plaintiff and the other class members statements and other representations during their forbearance plans in which, among other things, Defendant falsely threatened that "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home" and demanded that they "must pay" the amount of their delinquency "to bring your loan current."

---

[6] Consumer Financial Protection Bureau, *Mortgage and Housing Assistance – Exit Your Forbearance*, https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/help-for-homeowners/repay-forbearance/ (last accessed August 13, 2021).

121.    Defendant did not have the legal right to "demand" for Plaintiff and the class members to pay the full amount of their delinquency; nor did it have the legal right to charge them "fees" or proceed to "foreclosure" if Plaintiff and other similarly situated borrowers failed to do so.

122.    In so doing, Defendant violated 15 U.S.C. § 1692e(5).

123.    Further, the FDCPA prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

124.    By engaging in the above-mentioned conduct, Defendant made false representations and employed deceptive means to collect the mortgage obligations of Plaintiff and similarly situated class members during their forbearance plans.

125.    In so doing, Defendant violated 15 U.S.C. § 1692e(10).

126.    As a result of each and every violation of the FDCPA, Plaintiff Dutcher and the class members are entitled to recover actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) from Defendant.

### Count Five:
### Violations of the Rosenthal Act

127.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein, specifically including paragraphs 41–53.

128.    The Rosenthal Act applies to Defendant because it regularly engages in debt collection within California. Cal. Civ. Code § 1788.2(c).

129.    Plaintiff Dutcher purchased his home by residential mortgage for personal, family or household use and is a person who incurred a consumer debt. Cal. Civ. Code § 1788.2(e), (f).

130.    At all relevant times, the loan was due or owing at the time in that there were alleged past due payments. *Id.*

131.    The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in conduct prohibited by the FDCPA as set forth above, Defendant violated the Rosenthal Act.

132.    As a result of each and every violation of the Rosenthal Act, Plaintiff  Dutcher and members of the California Class are entitled to recover from Defendant actual damages pursuant to Cal. Civ. Code § 1788.30(a), statutory damages for a knowing or willful violation in the amount up to $1,000 pursuant to California Civil Code § 1788.30(b), and reasonable attorneys' fees and costs pursuant to California Civil Code § 1788.30(c).

**Prayer for Relief**

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests the following relief:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff Dutcher as representatives of the Classes; and naming Plaintiff's attorneys as  Class Counsel to represent the Classes;

B.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

C.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury to the maximum extent permissible by law;

D.    For prejudgment interest on all amounts awarded;

E.    For an order of restitution and all other forms of equitable monetary relief;

F.      For an order of judgment permanently enjoining Defendant from engaging in or relying upon telemarketing or other calls that violate the TCPA;

G.      For an order of judgment requiring Defendant to adopt measures to ensure compliance with the TCPA, FDCPA, and the Rosenthal Act;

H.      For injunctive relief as pleaded or as the Court may deem proper; and

I.      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 13, 2021                    Respectfully submitted,

                                          **BAILEY & GLASSER LLP**

                                          s/ Lawrence J. Lederer
                                          Lawrence J. Lederer (Pa. ID 50445)
                                          1055 Thomas Jefferson Street NW, Suite 540
                                          Washington, DC 20007
                                          T: 202.463.2101
                                          F: 202.463.2103
                                          llederer@baileyglasser.com

                                          John W. Barrett admitted *pro hac vice*
                                          209 Capitol Street
                                          Charleston, West Virginia 25301
                                          T: 304.345.6555
                                          F: 304.342.1110
                                          jbarrett@baileyglasser.com

                                          Benjamin J. Hogan admitted *pro hac vice*
                                          6 Canyon Road, Suite 200
                                          Morgantown, West Virginia 26508
                                          T: 304.594.0087
                                          F: 304.594.9709
                                          bhogan@baileyglasser.com

                                          **GUCOVSCHI LAW, PLLC**

                                          Adrian Gucovschi admitted *pro hac vice*
                                          630 Fifth Avenue Suite 2000
                                          New York, New York 10111
                                          T: 305.965.5813
                                          adrian@gucovschi-law.com

                                          *Counsel for Plaintiff and the Proposed Classes*

## **CERTIFICATE OF SERVICE**

I, Lawrence J. Lederer, hereby certify that on August 13, 2021, I caused a true and correct copy of the foregoing First Amended Class Action Complaint to be served on all counsel of record via the Court's Electronic Filing System and/or electronic mail.

BAILEY & GLASSER LLP


/s/ *Lawrence J. Lederer*
Lawrence J. Lederer