IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSS DUTCHER | : CIVIL ACTION |
| | : |
| v. | : NO. 21-2062 |
| | : |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING | : |

**FINAL ORDER APPROVING SETTLEMENT, FEES AND COSTS, AND ENTERING JUDGMENT**

**AND NOW**, this 20th day of October 2022, upon considering the Class Representative's unopposed Motion for final approval of a class settlement (ECF Doc. No. 56), Motion for an award of attorney's fees, reimbursement of expenses, and payment of service award (ECF Doc. No. 57), supplemental briefing and Declarations (ECF Doc. Nos. 58, 59), "Motion" to opt-out of the class settlement by putative class member Darryl Keith Browder (ECF Doc. No. 64) and other of Mr. Browder's filings (ECF Doc. Nos. 60, 61, 62, 63, 65), our Order denying Mr. Browder's "motions" at ECF Doc. Nos. 60, 61 and "Motion" at ECF Doc. No. 64 but liberally construing it as either an opt–out notice or objection to the settlement, the Class Representative's supplemental briefing addressing Mr. Browder's objections and in further support of the motions for final approval of the settlement and an award of attorney's fees, reimbursement of expenses, and payment of service award (ECF Doc. No. 67), and after our noticed Hearing on Final Approval (ECF Doc. No. 55) where no Class Members appeared, and with no objections to the settlement, attorney's fees or service award or other relief, it is **ORDERED**:

The Class Representative's unopposed Motion for Final Approval of Class Action Settlement (ECF Doc. No. 56) and Motion for attorney's fees, reimbursement of expenses, and payment of service award (ECF Doc. No. 57) are **GRANTED** and **JUDGMENT** is entered upon our findings:

*Findings of fair, adequate, and reasonable settlement.*

1. We have jurisdiction over the subject matter and over all parties under 28 U.S.C §§ 1331, 1332(d)(2)(A), and 47 U.S.C. § 227 including over all the Class Members following certification for settlement purposes.[1]

2. Ross Dutcher filed a class action complaint on August 13, 2021 alleging mortgage servicer NewRez LLC d/b/a Shellpoint Mortgage Servicing called him and sent letters to him and thousands of other people during the height of COVID-19 pandemic to address their undisputed defaults in existing mortgages it serviced and options to avoid foreclosure during the CARES Act[2] forbearance period.[3] He alleged Shellpoint did not have his phone number associated with his account and did not obtain his consent for the repeated calls. He alleged Shellpoint's calls violated the Telephone Consumer Protection Act[4] and its letters violated the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act, a California law protecting consumers

---

[1] Unless otherwise defined, all capitalized terms in this Memorandum have the same meaning as in the April 21, 2022 Revised Class Action Settlement Agreement (ECF Doc. No. 54–1.)

[2] Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 (March 27, 2020). *See* ECF Doc. No. 54–1, Article II, ¶ B.

[3] ECF Doc. No. 1. Shellpoint moved to dismiss the original complaint for lack of personal jurisdiction and to strike the class allegations. ECF Doc. No. 23. After convening a conference call with counsel where Shellpoint's counsel agreed to produce certain limited jurisdictional information, we allowed Mr. Dutcher to amend his complaint after analyzing our personal jurisdiction over Shellpoint. ECF Doc. No. 26. Mr. Dutcher and his counsel engaged in jurisdictional discovery and other efforts in preparation of filing an amended complaint. ECF Doc. No. 56–2, Declaration of Lawrence J. Lederer, ¶¶ 13–15 ("Lederer Declaration"). Mr. Dutcher filed an amended class action complaint in August 2021, adding the Fair Debt Collection Practices Act and California's Rosenthal Fair Debt Collection Practices Act. ECF Doc. No. 27. Shellpoint filed a motion to dismiss the amended complaint, but did not raise the personal jurisdictional issue. ECF Doc. No. 30.

[4] 47 U.S.C. § 227, *et seq.* ("TCPA").

from unfair debt collection practices.[5] Mr. Dutcher claimed Shellpoint violated the Telephone Consumer Protection Act's prohibition on pre-recorded calls made by an automatic telephone dialing system and by calling "do not call" consumers after requesting the calls stop. He claimed Shellpoint's letters violated the Fair Debt Collection Practices Act and Rosenthal Act through false and deceptive statements to collect or attempt to collect a debt.

3. On November 3, 2021, we denied Shellpoint's Motion to dismiss the amended Complaint and strike class allegations following oral argument.[6]

4. We held a Rule 16 conference and issued a Scheduling Order governing, among other issues, phased discovery on fact and expert discovery on the merits as warranted to move for class certification or for summary judgment on Class Representative Ross Dutcher's individual claims and then remaining merits and expert discovery to prepare for summary judgment and trial of Mr. Dutcher's claims, absent a class, or the class claims.[7] Consistent with our Scheduling Order, the parties moved into discovery, including initial disclosures, Shellpoint's production of thousands of pages of documents and spreadsheet data regarding its borrower customers which required numerous additional communications between the parties given the different mortgage statements Shellpoint issued, several separate meet and confers lasting several hours over multiple days involving the exchange of additional information preceded by detailed written correspondence between the parties concerning the evidence produced obviating the need for motions to compel, interrogatories, preparation and issuance of a corporate designee deposition

---

[5] 15 U.S.C. § 1692, *et seq.* ("FDCPA"); Cal. Civ. Code § 1788 ("Rosenthal Act").

[6] ECF Doc. No. 35.

[7] ECF Doc. No. 41.

notice to Shellpoint identifying twenty-two separate topics, and other information.[8] The parties also negotiated a confidentiality order.[9]

### *We preliminarily approved a class settlement.*

5. While continuing their discovery efforts, counsel for the parties began settlement discussions in January 2022.[10] The parties advised us in February 2022 they reached a putative class settlement.[11] We allowed the parties to file a joint Motion for approval of the class settlement and the parties did so on March 25, 2002.[12]

6. We held a noticed hearing on April 7, 2022 on the parties' joint Motion for preliminary approval of class action settlement.

7. In response to questions raised during our noticed April 7, 2022 hearing on the parties' joint Motion, the parties submitted a Revised Settlement Agreement.[13]

8. On April 25, 2022, after our noticed hearing, we granted the parties' joint Motion for preliminary approval of the Revised Settlement Agreement.[14] The Revised Settlement Agreement: (a) resolves the Released Claims under the Fair Debt Collection Practices Act and Rosenthal Act asserted in Counts Four and Five of the First Amended Class Action Complaint; (b) resolves the Class Representative's individual claims under the Telephone Consumer Protection

---

[8] ECF Doc. No. 56–2, Lederer Declaration, ¶¶ 27–28.

[9] *Id.*

[10] *Id.*, Lederer Declaration, ¶ 29.

[11] ECF Doc. No. 48.

[12] ECF Doc. Nos. 49, 50.

[13] ECF Doc. No. 54–1.

[14] ECF Doc. No. 55.

Act; and (c) provides for prospective action by Shellpoint including language in the Additional Messages box within any Delinquency Statement sent to customers during an active CARES Act forbearance plan, a complaint review process until all CARES Act forbearance plans conclude, a quarterly compliance review with mandated corrective action, and this Court's continuing jurisdiction to enforce the terms of the agreed prospective action.[15] The Revised Settlement Agreement does not resolve or release any other claim by a putative class member under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b)(1)(A), (b)(1)(A)(iii),(c)(1)(A), (b)(3), and its implementing regulations 47 C.F.R. §§ 64.1200(d)(3), (6), and 16 C.F.R. § 310.4(b)(i)(iii) asserted in Counts One, Two, and Three of the First Amended Class Action Complaint.[16]

9. We preliminarily certified a Settlement Class on behalf of: "All consumers nationwide (1) whose residential mortgage loan was serviced by Shellpoint; (2) whose residential mortgage had been placed into a CARES Act forbearance plan; and (3) who, while under a CARES Act forbearance plan, received a periodic mortgage statement in the same form as the statement attached as Exhibit A to the Settlement Agreement (ECF Doc. No. 50-3 at ECF pp. 26-27)".[17]

10. We appointed Ross Dutcher as a Class Representative and attorneys Lawrence J. Lederer, John W. Barrett, Benjamin J. Hogan of Bailey & Glasser LLP and Adrian Gucovschi of Gucovschi Rozenshteyn, PLLC as Class Counsel.[18]

---

[15] ECF Doc. No. 54–1, Article IV.

[16] ECF Doc. No. 54–1, Article XI, ¶ B.

[17] ECF Doc. No. 55, ¶ 18.a.

[18] *Id.*, ¶ 20.

11. We appointed Kroll Business Services as the Settlement Administrator to administer the settlement.[19]

12. We approved the long and short form Notice of Proposed Settlement of Class Action.[20]

13. Following our approval of notice, the Settlement Administrator caused the Notice of Proposed Settlement of Class Action and Settlement Hearing and Proof of Claim and Release to be published to potential Class Members.[21]

14. We ordered all requests for opt-out to be postmarked by July 27, 2022.

*We identify 104,624 Class Members after ruling on three Members' requests.*

15. The Settlement Administrator received twenty-two valid and timely opt-out requests from Class Members requesting exclusion from the Class and two untimely opt-out requests from Class Members as of October 6, 2022.[22]

16. The Settlement Administrator also received two opt-out requests after the required July 27, 2022 date for all opt-outs. After argument today, we accept Deborah Brown's opt-out request as she swears she timely mailed her opt-out to the address on the Notice but because of issues with the mail at her local post office, she called Class Counsel Lederer, whose name is on the Notice, to confirm Kroll Settlement Administrator received her opt-out.[23] Attorney Lederer

---

[19] *Id.*, ¶ 22.

[20] *Id.*, ¶¶ 23–26.

[21] ECF Doc. No. 59–1, Affidavit of Matthew Neylon, Senior Manager of Kroll Settlement Administration LLL; ECF Doc No. 67–1, Supplemental Affidavit of Matthew Neylon.

[22] ECF Doc. No. 67–1, Supplemental Affidavit of Matthew Neylon.

[23] ECF Doc. No. 67–2, Supplemental Declaration of L. Lederer; ECF Doc. No. 67–5, Declaration of Deborah Brown.

checked with Kroll and learned it had not received Ms. Brown's opt-out. Attorney Lederer informed Ms. Brown Kroll had not received her opt–out, recommended she resubmit an opt–out including by e-mail directly to he and Kroll. Ms. Brown then emailed her opt-out to Kroll. She asks the Court to accept her opt-out under the circumstances.[24] The parties agree to the Court's accepting Ms. Brown's opt-out request. The other untimely request is from Franklin D. Heabler, Jr. His opt-out purports to be timely dated June 15, 2022 but it is postmarked September 6, 2022, long after the July 27, 2022 deadline. Mr. Heabler did not provide good cause explaining his late request and we confirmed his address on his request is not residing in a correctional facility. We find no good cause to allow Mr. Heabler's untimely opt-out and he is part of the Class.

17.   Class Member Darryl Keith Browder moved to opt–out of the class settlement and simultaneously objected to the settlement.[25] Mr. Browder also moved to "appear" in this matter and for an award of attorney's fees, reimbursement of his expenses, and payment of a service award to settle his dispute with Shellpoint. He also filed an "exhibit" in support of his filing which appears to relate to his application for assistance in paying his utility bills in his home state of Iowa.

18.   We liberally construed Mr. Browder's "Motion" as either an opt-out notice or an objection, we denied Mr. Browder's "motion" to enter his appearance, we denied his motion for award of attorney's fees, expenses, and payment of a service fee as he is not an attorney admitted to practice in this Court but advised we will consider his request for a service award consistent with his opt-out notice and objection, and struck his "Application to defer payment of costs,"

---

[24] ECF Doc. No. 67–5.

[25] ECF Doc. No. 64.

Request for exemption from registration and e-filing," and "exhibits." We allowed the parties to file responsive memoranda to Mr. Browder's objection.

19. The Class Representative responded to Mr. Browder's objection. The Class Representative does not object to Mr. Browder's opting out of the Settlement and included him as one of the twenty-two Class Members who timely opted–out of the settlement.

20. We find Mr. Browder's pro se "Motion" must be liberally construed as an opt-out. He offers no objection to a specific settlement term. He instead demands compensation based on variety of theories (some of which are facially meritless) which he hopes to pursue against Shellpoint. We construe his Motion as an opt-out to allow him to timely pursue a claim should he have a good faith basis to do so.

21. We exclude twenty-three Class Members (including Ms. Brown) as timely opting-out of the Class leaving us with 104,624 Class Members.[26]

### The Class and Notice satisfies Rule 23.

22. We certify the Settlement Class on all claims under Fed. R. Civ. P. 23(a), (b)(3) as: "All consumers nationwide (1) whose residential mortgage loan was serviced by Shellpoint; (2) whose residential mortgage had been placed into a CARES Act forbearance plan; and (3) who, while under a CARES Act forbearance plan, received a periodic mortgage statement in the same form as the statement attached as Exhibit A to the Settlement Agreement (ECF Doc. No. 50-3 at ECF pp. 26-27)."[27]

---

[26] We exclude Class Members from the terms of this settlement and Order: Janice Miranti; Sandra Murphy; Leonard Hegi; Carolyn Britton; Daniel Shogren; Evan Williams; Robert Koenig; Rodger Woodruff II; Anna Fielder; Stephen Passaro; Michelle Doers; Daniel Dissett; Milvia Butler; Charlie Cherry; Jeffrey Peterson; Darryl Browder; Diana Boardley; Tommy Jackson; Danette Hinchey; Lizzeth Brown; Raul Vasquez; Jennifer Watson, and Deborah Brown.

[27] The Class is as preliminarily approved on April 25, 2022 (ECF Doc. No. 55). We review the

23. The Class Representative acted independently, and Class Representative and Class Counsel fairly and adequately represented the Class in connection with the litigation and settlement.

24. The settlement arises from a genuine controversy between the parties and is not the result of collusion, nor was the settlement procured by fraud or misrepresentation.

25. As of the Effective Date, this Settlement forever releases and discharges all Released Claims against all Released Parties except for persons who validly and timely excluded themselves from the Class.

26. As of the Effective Date, Class Representatives, all Class Members, Class Counsel, and any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, will be forever barred and enjoined from commencing, instituting, maintaining, prosecuting, or asserting, either directly or in any other capacity, in any forum, any Released Claims against any of the Released parties.

27. After applying each of the factors reaffirmed by our Court of Appeals in *In re Nat'l Football League Players Concussion Injury Litigation*, we approve Revised Class Action Settlement Agreement and find the settlement fair, reasonable, and adequate to all members of the

---

Settlement Class at this stage. The Settlement Class satisfies the Rule 23 requirements: (1) the Class consists of over 40 members; (2) the Class shares the common question challenging Shellpoint's letters attempting through false and deceptive statements to collect or attempting to collect a debt in violation of the Fair Debt Collection Practices Act and Rosenthal Act; (3) the "interests of the class and the class representative aligned" on the same facts and legal theories; and, (4) Class Counsel has proven to be qualified, experienced, and generally able to conduct the proposed litigation and the Class Representative's interests are not antagonistic to the Class. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426-435 (3d Cir. 2016).

Class.[28] We authorize and direct implementation and performance of all the terms and provisions of the Revised Class Action Settlement Agreement, as well as the terms and provisions hereof.

28. The Class satisfies Fed. R. Civ. P. 23(a) and is maintainable under Rule 23(b)(2). We certify the Class for purposes of settlement.

29. The Notice approved by this Court and provided to all members of the Class, including through mailing to all potential Class Members, and on the Notice Administrator's website, adequately informing Class Members the terms of the Settlement and the procedure to

---

[28] When determining whether a proposed class action settlement is fair, reasonable, and adequate, we consider nine factors: "(1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 534-35 (citing *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975)).

The first factor supports settlement because this action involved complex questions under the Fair Debt Collection Practices Law and the Telephone Consumer Protection Act resulting in substantial legal briefing and our Memorandum Opinion. The continued litigation of these issues would have resulted in significant expense but for the settlement, including questions raised as to class certification. The second factor supports settlement because the Class responded overwhelmingly favorably to the settlement as there are no objectors and only twenty-three opt-outs over 104,000 persons. The third factor supports settlement because the parties reached settlement after litigating this matter extensively over a period of several months as demonstrated in the extensive time records provided by counsel. The fourth factor supports settlement because the Plaintiff faced significant risk in class certification and in establishing a claim on a Class–wide basis and this settlement provides relief to over 104,000 persons which otherwise would have involved a substantial risk of establishing reliability. The fifth factor supports settlement as a risk of establishing these damages is great given arguments under the governing law. The sixth factor also militates in favor of approval as settlement precludes the risk associated with trial and the multiple Class Action and evidentiary challenges. The seventh factor weighs in favor of settlement mindful the Defendant may have been able to sustain a greater judgment, but it may be difficult to establish damages at a greater number across the board. The eighth and ninth factors support a finding of a reasonable, fair, and adequate settlement considering the risks faced by the Class Representative and pursing a settlement fund of this amount, obtaining prospective relief, and a separate recovery for attorney's fees.

request written exclusion from the Class, and to be heard at our Final Approval Hearing satisfies Fed. R. Civ. P. 23(e)(1).[29]

30. Under the terms in the Revised Class Action Settlement Agreement, the parties forever release and discharge defined claims against each other, except for enforcing terms of the Settlement or this Order.

31. Neither the Revised Class Action Settlement Agreement nor any act performed or document executed under or in furtherance of the Revised Class Action Settlement Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendant or its Released Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Defendant or its Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Defendant and/or its Released Parties may file the Revised Class Action Settlement Agreement and/or this Judgment Order in any action which may be brought against any of them to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

32. The Parties agree they and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

33. The way the Settlement Amount will be distributed as defined in the Court-approved Notices sent to Class Members, are fair and provides a reasonable basis upon which to

---

[29] *See* ECF Doc. No. 67–1, Supplemental Affidavit of Matthew Neylon, Kroll Settlement Administration LLC, and attached Notices.

allocate the proceeds among Class Members, with due consideration given to administrative convenience and necessity.

34. No members of the Class attended the Final Approval Hearing, notice of which was included in the Class Notice, to raise objections, advance questions, or oppose the settlement.

### *We approve Class Counsel's requested fee and costs.*

35. We award $250,000 in fees to Class Counsel to be shared among them as they confirmed to be agreed without reservation. We award $1,300 in costs to Bailey & Glasser, LLP. Under the terms of the Revised Class Settlement Agreement, the agreed-upon total of $250,000 in attorney's fees to Class Counsel and $1,300 in costs and expenses will be paid directly by Shellpoint, separate from and in addition to the $500,000 Settlement Fund Shellpoint agreed to pay to the Settlement Class.

36. Class Counsel provided highly competent representation for the Class and are awarded $250,000 in fees and $1,300 in demonstrated expenses. These fees and costs shall be paid to Class Counsel under the Revised Class Action Settlement Agreement upon payment of the first consideration to the Class Members.

    a. Exercising our discretion,[30] we conduct a "thorough judicial review" to determine the amount of any award to counsel.[31] "Judicial deference to the results of private negotiations is undoubtedly appropriate for many settlements, but not for class action settlements, including their attorney fee terms. 'That the defendant in form agrees to pay the fees independently

---

[30] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

[31] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 333 (3d Cir. 1998); *In re Gen. Motors*, 55 F.3d at 819.

of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award.'"[32]

      b.    We scrutinize a fee request separate from the compensation paid to the Class to ensure Class Counsel is not obtaining a percentage recovery which it could not otherwise obtain if we considered the entire compensation. We view the entire compensation as one compromise. We find the total compensation of $750,000 (the $500,000 direct to the Class and $250,000 to the Class Counsel) and a one-third recovery of fees is appropriate after applying our reasonableness factors.

      c.    Class Counsel conducted extensive investigation, research, focused discovery and evaluated respective risks of further litigation, including the risk of decertification of the certified class, additional costs, and delay associated with further prosecution of this action. The parties reached the Agreement through arm's length settlement negotiations leading to the settlement, and, ultimately the Revised Class Action Settlement Agreement. Class Counsel recovered the statutory maximum amount recoverable under the Fair Debt Collection Practices Act. Class Counsel's fees are reasonable and necessary for the benefit of the Class.[33]

---

[32] *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 713 (7th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)).

[33] We consider seven factors to analyze the reasonableness of the requested fee: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases. As to the first factor, the Settlement Amount fully addresses the claims under the approved Revised Class Action Settlement Agreement providing an immediate benefit to each Settlement Class member. The second factor supports the proposed fee because there were no objectors. The third factor supports the proposed fee as Class Counsel possesses substantial experience in class action litigation, including consumer, Fair Debt Collection Practices Act, and Telephone Consumer Protection Act cases. Class Counsel secured a monetary and non-monetary benefit to the Settlement Class; Shellpoint's agreement for all customers enrolled in the

13

d.  As a cross-check, we reviewed Class Counsel's lodestar of $726,978 for a total of 1,108.20 hours of work through June 30, 2022; 949.2 hours by Bailey & Glasser, LLP and 159 hours by Gucovschi Rozenshteyn, PLLC. An award of $250,000 in attorney's fees represents approximately 35% of the $726,978 lodestar. This requested fee is substantially less than the lodestar.

### *We approve the separate payments to Mr. Dutcher.*

37. We approve a separate payment by Shellpoint of $5,000 to Mr. Dutcher: $2,500 to settle Mr. Dutcher's individual claims under the Telephone Consumer Protection Act and $2,500 as a Class Representative Award for his time and effort, finding it to be fair and reasonable for his efforts on behalf of Class Members. Mr. Dutcher actively participated in the case and consulted with Class Counsel throughout the case, assisted Class Counsel in obtaining information for the lawsuit and in the discovery process, produced documents, actively consulted with counsel

---

CARES Act forbearance plan to prospectively include a message on any Delinquency Statement clarifying the expiration of an active forbearance plan, a number to call for questions, and the omission of an amount due while under an active forbearance plan. The fourth factor supports the proposed fee because the federal statutes at issue are complex, required motion practice, substantial discovery, and a negotiated settlement while conducting merits and class certification discovery. Litigation of these issues would have likely resulted in an increasing and significant expense but for the Settlement. The fifth factor supports the proposed fee because of the risk inherent in Class Counsel's decision to take this case on a contingency fee basis. The sixth factor supports the proposed fee because Class Counsel expended 1,108.20 total hours prosecuting this litigation since May 2021 to June 30, 2022 at an hourly blended rate of approximately $656 per hour based on $100 per hour for a legal assistant; $260 to $275 per hour for paralegals; $375 an hour for an investigator $425 to $445 for associates: $800 to $975 per hour for partners; and $875 for an "of counsel" attorney. Our approval today does not equate to a finding these hourly rates are the fair rates in this District but no Class Member objects and even if we were to redline the hourly rates based on fees in this District, Class Counsel have shown an approximate one-third recovery is appropriate for their efforts in this difficult case. The seventh factor supports the proposed fee as consistent with fee awards in this District.

throughout the litigation including during settlement negotiations and for Court approval of the Revised Settlement Agreement.[34]

### *We approve the plan of allocation.*

38. We approve the plan of distribution of the Settlement Amount to members of the Settlement Class on a pro rata basis, with only one Settlement Payment made per Class Loan, with the Settlement Payment to be made to the primary borrower on the account. If Shellpoint still services the mortgage loan of any member of the Settlement Class and is able to do so, Shellpoint will pay Settlement Class Members by issuing a credit of their pro rata portion of the Settlement Amount to their mortgage loan account in lieu of issuing a check. Any portion of the Settlement Amount not paid through the issuance of a credit by Shellpoint (the "Remaining Settlement Amount") shall be wired by Shellpoint into an escrow account established and maintained jointly by Escrow Agents Akerman LLP and Settlement Administrator Kroll Settlement Administration LLC and shall be paid out to remaining Settlement Class Members by check issued by the Settlement Administrator. Any interest accruing on the Remaining Settlement Amount will be added to the Settlement Amount. The plan of distribution provides consideration for all Class Members in exchange for a release, additional consideration for the 104,647 Members of the Class Members filing claims, and allows remaining funds not cashed by the Class Members to be subject to a *cy pres* recipient.

39. Class Counsel shall, on or before May 1, 2023, file a Notice of complete distribution of the Qualified Settlement Fund or move for *cy pres* distribution with a connection to the issues in this case including representing indigent persons.

### *We dismiss the claims.*

---

[34] ECF Doc. Nos. 50–6, 54–7, 56–2, Declarations of Ross Dutcher.

40. Excepting those individuals who validly and timely requested exclusion from the Class, the claims of all Class Members based on or arising out of any acts, facts, transactions, occurrences, representations, or omissions which are alleged, or which could have been alleged, in the First Amended Class Action Complaint, on the merits are **dismissed with prejudice** and without costs to any of the parties as against any other settling party, except as provided in the Revised Class Action Settlement Agreement.

41. The Clerk of Court shall **close this case** retaining jurisdiction only to enforce this Order.

_____
KEARNEY, J.